# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. _____

CARACOL TELEVISIÓN S.A.; and
CARACOL TELEVISION, INC.

        Plaintiffs,

    v.

TVMIA INTERNATIONAL, CORP. d/b/a
TVmia and d/b/a Telefonica Latina;
EDUARDO PEREZ BUCCI; MARCELO
J. ADARVEZ; TEVEYA, CORP.; and
WORLD PASS COMMUNICATIONS
CORP.,

        Defendants

_____/

## <u>COMPLAINT</u>

Plaintiffs Caracol Televisión S.A. ("Caracol") and Caracol Television, Inc. ("CTV Inc."), complaining of the acts of the Defendants, allege and state as follows:

1.    This is an action for willful copyright infringement arising out of Defendants' pirating of Caracol's copyrighted television programming. Caracol produces and compiles television programming in Colombia, South America, which is transmitted and distributed by Caracol, CTV Inc., and others authorized by Caracol or CTV Inc. throughout Colombia and internationally, including in the United States.

2.    Without Caracol's authorization, and despite Caracol's demands that Defendants cease their unlawful activities, Defendants have willfully and repeatedly infringed, and are continuing to willfully and repeatedly infringe, Caracol's copyrights by retransmitting Caracol's audiovisual works over the Internet, including throughout Florida and the rest of the United

States.  Defendants' activities violate Caracol's rights under copyright to publicly perform, reproduce, distribute, and prepare derivative works of its television programming, in clear violation of federal copyright law.

3.     In addition to willful copyright infringement, Defendants are also using Caracol's trademarks (and service marks), including its name and logos, in violation of the federal Lanham Act, 15 U.S.C. 1125(a) and 1125(c).  As alleged below, Defendants' wrongful use of Caracol's trademarks is likely to cause confusion, to cause mistake, or to deceive the public, including by suggesting that Defendants' illegal websites and distribution platforms are affiliated or associated with Plaintiffs and/or are operating with the sponsorship or approval of Plaintiffs, when in fact neither is the case.  Use of Caracol's trademarks by Defendants in connection with Defendants' illicit activities is also likely to cause dilution by blurring and tarnishing Caracol's trademarks and Caracol's goodwill associated therewith.

4.     Because Defendants have been and are knowingly infringing Caracol's copyrights and trademarks, Caracol and CTV Inc. have brought this lawsuit to put a stop to Defendants' wrongdoing through injunctive relief and to recover damages for the same.

## PARTIES

5.     Caracol is a *sociedad anónima* (a type of corporation) organized and existing under the laws of the country of Colombia, and its principal place of business is in Bogotá, Colombia.

6.     CTV Inc. is a corporation organized and existing under the laws of the State of Florida, and its principal place of business is in Coral Gables, Florida.  CTV Inc. is an affiliate of Caracol.

2

7.      Defendant TVmia International Corp. d/b/a TVmia and d/b/a Telefonica Latina ("TVmia") is a corporation organized and existing under the laws of the State of Florida and with a principal place of business in Miami, Florida.

8.      Defendant Eduardo Perez Bucci ("Bucci") is an individual residing in Key Biscayne, Florida.  Upon information and belief, Bucci is the founder, owner, and an officer and/or director of TVmia and acts as an agent of TVmia.

9.      Defendant Marcelo J. Adarvez ("Adarvez") is an individual residing in Miami, Florida.  Upon information and belief, Adarvez is currently President and Registered Agent of TVmia and acts as an agent of TVmia.

10.      Defendant Teveya, Corp. ("Teveya") is a corporation organized and existing under the laws of the State of Florida and with a principal place of business in Miami, Florida. Upon information and belief, Bucci is the founder, owner, and an officer and/or director of Teveya and acts as an agent of Teveya.

11.      Defendant World Pass Communications Corp. ("World Pass") is a corporation organized and existing under the laws of the State of Florida and with a principal place of business in Miami, Florida.   Upon information and belief, Bucci is the owner, and an officer and/or director of World Pass and acts as an agent of World Pass.

## JURISDICTION AND VENUE

12.      The Court has exclusive subject-matter jurisdiction over this case pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 because this case arises under the laws of the United States, including under the Copyright Act, 17 U.S.C. § 101, et seq. (the "Copyright Act"), and the Lanham Act, 15 U.S.C. § 1051, et seq. (the "Lanham Act").

13.      The Court has personal jurisdiction under Fla. Stat. § 48.193(2) over each Defendant as follows:

a.  TVmia has its principal place of business, and is engaged in continuous and systematic business, in this District.

b.  Teveya, Corp. has its principal place of business, and is engaged in continuous and systematic business, in this District.

c.  Bucci resides, owns property, and conducts substantial business in this District.

d.  Adarvez resides and conducts substantial business in this District.

e.  World Pass has its principal place of business, and is engaged in continuous and systematic business, in this District.

14.  Venue is proper in this Court and District pursuant to 28 U.S.C. §§ 1391 and 1400(a) for the following reasons:

a.  A substantial portion of the events giving rise to Caracol's claims, including Defendants' unauthorized and unlawful retransmission of Caracol's programming and use of Caracol's trademarks, occurs in this District.

b.  All Defendants reside in the State of Florida and some or all Defendants reside in this District.

c.  Some or all Defendants or their agents may be found in this District.

## FACTUAL ALLEGATIONS

**A.   Caracol's Television Programming**

15.  Caracol is a diverse media and entertainment company and television network. Caracol creates, produces, compiles, promotes, sells, provides, broadcasts, transmits, performs, distributes, and makes derivative works of a wide range of television programs and programming

4

channels, and provides other related television programming products and services, throughout the world ("Caracol's Programming").

16. Caracol's Programming features many original television programs created and produced by or on behalf of Caracol (the "Original Programs"), including news programming, drama series (or *telenovelas*), comedy series, talk programs, sports, and other entertainment programming. Caracol's Original Programs include, for example, Caracol's daily news program *Noticias*, which is produced and broadcast several times a day, Caracol's daily talk show *Día a Día*, and Caracol's television series *Cinco Viudas Sueltas*, *Club 10*, *La Niña*, *Mujeres Al Limite*, and *Tu Voz Estéreo*.

17. Caracol's Programming includes an original 24-hour programming feed which Caracol compiles using its Original Programs together with other programming Caracol licenses from third parties. Caracol distributes this programming feed over Caracol's broadcast television channel of the same name in Colombia (the "Caracol Channel"). The Caracol Channel is a private television channel licensed to Caracol by Colombia's National Television Commission, and it includes a network of broadcast towers and transmission facilities throughout the country of Colombia owned or operated by Caracol. The Caracol Channel is also lawfully retransmitted by satellite, cable, and other multichannel video programming distributors ("MVPDs") within and throughout Colombia. The Caracol Channel is the highest-rated television channel in Colombia.

18. Caracol does not authorize the Caracol Channel to be distributed outside of Colombia. However, Caracol does separately distribute, and authorize others to distribute, Caracol's Original Programs throughout the world, including in the United States, by other distribution means.

19.     Caracol's Programming also includes an original 24-hour international programming channel, which distributes certain of Caracol's Original Programs, such as Caracol's news and morning talk shows (the "Caracol International Channel").  The Caracol International Channel is a different programming feed than the Caracol Channel in Colombia. The Caracol International Channel is distributed to customers throughout the world, including in the United States by MVPDs such as satellite television providers DIRECTV and DISH Network, and by major cable systems including Charter and Comcast.

20.     Caracol also licenses its Original Programs (including the formats or "treatments" underlying such programs) to third parties for international co-productions and distribution on other platforms.  For example, Caracol licensed its acclaimed original series *La Esclava Blanca* for exclusive distribution in the United States on the Telemundo network.  In addition to third-party television networks, Caracol also licenses its Original Programs to Internet distributors. For example, Caracol has exclusively licensed its original series *La Niña* for Internet distribution by Netflix.

21.     CTV Inc. is the exclusive licensing agent for the licensing of Caracol's Original Programs, and is Caracol's exclusive licensee for distribution of the Caracol International Channel in the United States.

22.     Through CTV Inc., Caracol's Original Programs have been licensed and lawfully distributed with Caracol's consent worldwide, including in Miami, Florida, and the surrounding areas.  For example, customers of DIRECTV, DISH Network, Charter, and Comcast in Miami can subscribe to the Caracol International Channel and watch Caracol's Original Programs that Caracol distributes on the Caracol International Channel.  Indeed, given the large population of

Colombians and Colombian-Americans residing in the Miami area, Caracol's Original Programs are very popular in Miami.

23.     Caracol and CTV Inc. invest substantial amounts of money, time, energy, and effort creating, producing, advertising, promoting, selling, broadcasting, transmitting, distributing, performing, making derivative works of, and licensing others to distribute, retransmit, perform, and make derivative works of, Caracol's Programming, including the Original Programs, the Caracol Channel and the Caracol International Channel.

24.     Caracol is compensated for its creative efforts and monetary investments in Caracol's Programming primarily through: (i) the licensing and sale of its Original Programs for international co-productions and distribution by third parties such as Univision, Telemundo, and Netflix; (ii) the sale of commercial advertising on the Caracol Channel and the Caracol International Channel; and (iii) carriage arrangements with MVPDs who are authorized by Caracol to retransmit the Caracol International Channel, including Caracol's Programming as broadcast thereon, throughout the world, including in the United States.

**B.      Caracol's Trademarks and Service Marks**

25.     In connection with creating, producing, advertising, promoting, selling, broadcasting, transmitting, distributing, performing, making derivative works of, and licensing others to distribute, retransmit, perform, and make derivative works of, Caracol's Programming, Caracol and CTV Inc. prominently use the name "Caracol" and other distinctive logos, symbols, devices, icons, or combinations or variations thereof that identify Caracol or CTV Inc. as the source of the Caracol Programming (the "Caracol Marks").

26.     Caracol and CTV Inc. use the Caracol Marks throughout commerce, including in identifying Caracol in credits and other designations as the source of each of its Original

Programs, and in continuous watermarks displayed on the Caracol Channel and the Caracol International Channel which identify Caracol as the source of those programming feeds. The Caracol Marks are also prominently used in connection with the advertising and promoting of Caracol's Programming, including on Caracol's website www.caracoltv.com, and in connection with the promotion and licensing of Caracol's Original Programs to third-party distributors.

27.    Caracol has invested substantial time, effort, and financial resources in promoting the Caracol Marks in connection with creating and distributing Caracol's Programming. The Caracol Marks are assets of substantial value, are inherently distinctive, and have become, through widespread and favorable public acceptance and recognition, famous identifiers and symbols of Caracol's Programming and Caracol's and CTV Inc.'s other quality products, services, and goodwill. The consuming public, including Caracol's viewers and Caracol's distributors, recognizes the Caracol Marks and associates them with the high standards, quality, style and image of Caracol and CTV Inc.

**C.    Defendants' Acts of Infringement**

28.    TVmia does and has done business, among other ways, by providing and streaming television programming from Spanish-speaking countries, such as Argentina, Colombia, Spain, and Peru, over the Internet to its paying subscribers using various public websites and other Internet video programming distribution platforms such as the Roku streaming media platform (www.roku.com) and mobile Apple iOS and Android device platforms (the "TVmia Service"). The TVmia Service is available on the Internet throughout the world—indeed, the main page of the TVmia Service website expressly states that the TVmia Service is available in the United States ("*Si, TVmia está disponible en Estados Unidos!*").

29.     Commencing in or before 2011 and continuing up to the present, Defendants have been intercepting the Caracol Channel, including Caracol's Original Programs that are distributed on the Caracol Channel and the Caracol Marks embodied therein, and retransmitting it via the Internet to subscribers of the TVmia Service.  Defendants are doing so in order to profit off of Caracol's Programming without Caracol's consent.

30.     In particular, Defendants are intercepting the Caracol Channel as it airs live in Colombia using an antenna, cable box, or some other means, and transcoding the entire programming feed into a format suitable for retransmission over the Internet.  Defendants then retransmit the Caracol Channel in real time over the Internet to their TVmia Service subscribers throughout the world, including in Florida and elsewhere in the United States, who pay Defendants between $9.90 and $20.00 per month, for viewing on Internet-connected devices, such as desktop and laptop computers, tablet devices, smartphones, and Roku players.  Caracol has never consented to or otherwise authorized Defendants to retransmit or otherwise distribute Caracol's Programming.

31.     In connection with Defendants' unauthorized retransmission of the Caracol Channel, the Defendants are using the Caracol Marks as contained in Caracol's Programming as distributed on the Caracol Channel.  Moreover, Defendants have used the Caracol Marks in the promotion and advertising of their unauthorized TVmia Service, including in metadata on their website, to direct members of the public interested in television programming from Colombia to Defendants' TVmia Service.  Defendants have also used, and are continuing to use, the Caracol Marks on its websites and other distribution platforms to direct Defendants' customers specifically to the unauthorized retransmissions of the Caracol Channel on the TVmia Service, with devices such as web links, programming guides, and icons containing the Caracol Marks.

32.     Caracol first learned that the websites www.tvmia.com and www.teveya.com were retransmitting the Caracol Channel and using the Caracol Marks without authorization in 2011.

33.     The ICANN WHOIS database identifies "Telefonica Latina," a fictitious name that TVmia registered with the Florida Secretary of State, as the registrant organization with TVmia's mailing address for the website URL www.tvmia.com.  The ICANN WHOIS database also identifies Bucci as the registrant contact for the website address www.tvmia.com.  Upon information and belief, TVmia or its owners, officers, or affiliates, including Bucci and the other Defendants, select the content available on and/or own the www.tvmia.com website.

34.     As of July 2013, the ICANN WHOIS database identified Telefonica Latina as the registrant organization with TVmia's address for the website URL www.teveya.com.  The ICANN WHOIS database also identified Bucci as the registrant contact for the website address www.teveya.com.  Upon information and belief, TVmia or its owners, officers, or affiliates, including Bucci and the other Defendants, select the content available on and/or own the www.teveya.com website.  In particular, upon information and belief, Teveya is or was responsible for the www.teveya.com website.

35.     Plaintiffs learned that Defendants were also retransmitting the Caracol Channel via the Internet on the Roku platform.  Subscribers of TVmia could use their TVmia account information to access the Caracol Channel on the Roku platform by installing and using one or more software applications (the "Roku Applications"), including those named "tvmia," "TeVeYa!," and "Carateveo," on a hardware device called a Roku player.  Upon information and belief, TVmia or its owners, officers, or affiliates, including Bucci and the other Defendants,

developed and distributed the Roku Applications and select the content that was or is available to TVmia Service subscribers on the Roku Applications, including the Caracol Channel.

36.     On December 27, 2011, Caracol, through counsel, wrote to TVmia and Bucci and demanded that they cease all infringing activity.

37.     In response, Defendants suggested they were going to cease the infringing activity.  However, after a period of time, Caracol learned that Defendants were continuing to retransmit the Caracol Channel and use the Caracol Marks without authorization.

38.     On August 12, 2013, Caracol served upon TVmia, Bucci, and Teveya an Advance Notice of Potential Infringement under the Copyright Act, 17 U.S.C. § 411(c) (the "Advance Notice").  The Advance Notice provided advance notice of programs that were broadcast on the Caracol Channel on August 20, 2013.  Though counsel, Bucci acknowledged receipt of the Advance notice on August 18, 2013.

39.     In conjunction with the Advance Notice, on August 13, 2013, Caracol sent to the same parties a second demand letter demanding that they cease their infringing activities, including their unauthorized retransmission of Caracol's television programming on the www.tvmia.com and www.teveya.com websites.

40.     On August 13 and 14, 2013, Caracol sent takedown notices under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512, to Roku, Inc. and to Amazon Web Services, LLC (the internet service providers hosting and serving the content on behalf of the TVmia Service) asking those entities to disable and remove the infringing content from their Internet hosting services.

41.     Following Caracol's August 2013 notices and demand, the Caracol Channel continued to be available via the TVmia Service.  However, shortly after receipt of those letters,

Defendants removed the Caracol Mark icon from the www.tvmia.com and www.teveya.com websites and replaced it with a different icon using the words "CaraTV," which, upon information and belief, Defendant created directly in response to Caracol's notices and demands. The "CaraTV" icon continued to direct TVmia Service subscribers to Defendants' unauthorized retransmission of the Caracol Channel.

42.     Finally, and after further correspondence by the undersigned counsel with Roku, Inc. and Amazon Web Services, LLC, between August 20, 2013, and the end of August 2013, the infringing content appeared to have been removed from the TVmia Service.

43.     In early 2016, Caracol discovered that Defendants in fact had not ceased the unauthorized retransmission of the Caracol Channel on www.tvmia.com.     The website www.teveya.com now automatically redirects visitors to the website www.tvmia.com.

44.     In addition to continuing the unauthorized retransmission of the Caracol Channel on www.tvmia.com, Defendants' were also retransmitting the Caracol Channel on Apple iOS and Android device platforms (the "Mobile Applications").   The website www.tvmia.com contains links for TVmia Service subscribers to download, install, and use the Mobile Applications to access programming provided by TVmia using their TVmia account information. Upon information and belief, TVmia or its owners, officers, or affiliates, including Bucci and the other Defendants, developed the Mobile Applications and select the content that was or is available to TVmia Service subscribers on the Mobile Applications.

45.     Caracol learned that Defendants were using a new Internet service provider to host their infringing activity on www.tvmia.com and via the Mobile Applications.  In response, on April 6, 2016, Caracol sent DMCA takedown notices to Birch Communications, Inc. (formerly Cbeyond, Inc.), the new host server for the www.tvmia.com website, and to the Apple

App Store and Google Play, the distributors of Defendants' Mobile Applications. Shortly thereafter, the Caracol Channel was disabled on www.tvmia.com and the Apple iOS Mobile Application.

46.     With respect to the Android Mobile Application, following Caracol's April 6 DMCA notices, Defendants removed the Caracol Mark graphical icon from the Android Mobile Application, but the Caracol Channel otherwise continued to be available on the Android Mobile Application.   After additional correspondence by the undersigned counsel with Birch Communications, Inc. and Google Play, the Caracol Channel was disabled on the Android Mobile Application later in April 2016.

47.     On April 7, 2016, an attorney wrote to undersigned counsel on behalf of "www.tvmia.com," stating in part that "[i]n March of 2016 a new webpage was launched by www.tvmia.com which accidentally included the Caracol channels that were previously removed in 2013 with the prior take-down notice."

48.     Contrary to the claim by Defendants' counsel that the latest instance of Defendants' pattern of infringement was "accidental," Defendants were continuing to make the Caracol Channel available on the Android Mobile Application as described above.

49.     Moreover, Caracol learned that in response to queries from subscribers of the TVmia Service concerning the availability of the Caracol Channel, Defendants' representatives inform their subscribers that Defendants continue to make the Caracol Channel available through another website, www.satelitecolombia.com.  Indeed, the Colombia section of www.tvmia.com contains a link to www.satelitecolombia.com which expressly states that users can access www.satelitecolombia.com using their TVmia user information.

50.     As a result, TVmia Service subscribers are currently able to use their TVmia account username and password information on www.satelitecolombia.com to continue to access the Caracol Channel without authorization.  Upon information and belief, TVmia or its owners, officers, or affiliates, including Bucci and the other Defendants, select the content available on and/or own the www.satelitecolombia.com website.  Thus, despite Defendants' representation, through counsel, that they were ceasing their infringing activity in response to Caracol's April 2016 DMCA takedown notices, Defendants in fact just moved their infringing activity to a third website.

51.     Defendants' infringing activity continues up to the present and, given the repeated demands Defendants have received from Caracol to cease their infringing activity, their infringing activity is knowing and intentional.

52.     Plaintiffs are suffering and have suffered both competitive and economic harm from Defendants' unauthorized and unlawful conduct.

53.     By commercially exploiting Caracol's Programming without authorization, Defendants compete directly with Plaintiffs and their lawful distributors, and Defendants disadvantage and undermine Caracol's substantial creative and financial investment in the creation and broadcast of its television programming.  For example, viewers of Caracol's Original Programs in the United States may use Defendants' unauthorized television distribution service to bypass the lawful distribution of such Original Programs by CTV Inc. on the Caracol International Channel, or by authorized third-party distributors such as Telemundo.  By willfully, wantonly, and unfairly exploiting Caracol's Programming for their own commercial benefit, Defendants are free riding on the Plaintiffs' substantial investment in their production, broadcasting, and distribution infrastructure.

54.     Moreover, Defendants' infringing and unlawful conduct is causing and will cause Caracol substantial and irreparable injury by, among other things, undermining its business relationships with third-party program suppliers who license programming to Caracol for distribution on the Caracol Channel only in Colombia.

55.     Also, Defendants' unauthorized use of the Caracol Marks has damaged Plaintiffs by, among other things, harming the value of the goodwill Plaintiffs have built in their businesses and in Caracol's Programming.  In particular, Defendants' unauthorized use of the Caracol Marks deceive the public, including Caracol's programming suppliers and authorized distributors of Caracol's Programming, into believing that Plaintiffs are affiliated or associated with, or that Plaintiffs have sponsored, approved, or otherwise endorsed the availability the Caracol Channel on, Defendants' TVmia Service, when in fact neither are the case.  Defendants' use of the Caracol Marks on its unauthorized TVmia Service also undermines Plaintiffs' ability to control the quality and other standards associated with the Caracol Marks and Caracol's products and services and thereby tarnishes the distinctiveness, strength, and value of the Caracol Marks.

## FIRST CAUSE OF ACTION
### (Copyright Infringement, 17 U.S.C. §§ 106 and 501)

56.     The allegations contained in the foregoing paragraphs are repeated, realleged, and incorporated herein by reference as if fully set forth.

57.     Caracol is the owner of the copyrights in Caracol's Programming both as certain discrete audiovisual works and as compilations of audiovisual works under the Copyright Act, 17 U.S.C. § 101.

58.     Caracol is the owner of the copyrights in the Caracol Channel as an audiovisual work compilation under the Copyright Act, 17 U.S.C. § 101.  The Caracol Channel is a

compilation of audiovisual works assembled by Caracol as an original work of authorship. The Caracol Channel includes Caracol's Original Programs and other television programs and programming elements, such as promotional materials and commercial elements, provided by third parties which Caracol is authorized to use on the Caracol Channel. A sample broadcast day schedule of audiovisual work programming Caracol assembles and provides in connection with the Caracol Channel compilation is attached as Exhibit 1.

59.     Caracol is also the owner of the copyrights in its numerous Original Programs, which are original works of authorship created and produced by or for Caracol as audiovisual works under the Copyright Act, 17 U.S.C. § 101. Caracol's Original Programs are distributed in Colombia exclusively by Caracol on the Caracol Channel.

60.     Caracol is also the owner of the copyrights in the logos and graphic design elements embodied in the Caracol Marks, including those identified in Exhibit 2, as original works of authorship created and produced by or for Caracol as pictorial or graphic works under the Copyright Act, 17 U.S.C. § 101, and which are regularly displayed on and included within the Caracol Channel and Caracol's Original Programs.

61.     CTV Inc. is the exclusive licensing agent for distribution of Caracol's Original Programs outside of Colombia, and is the exclusive licensee for distribution of the Caracol International Channel in the United States, which is another audiovisual work compilation owned by Caracol and containing certain of Caracol's Original Programs.

62.     Caracol's Programming, including Caracol's Original Programs and the Caracol Channel, are original audiovisual works that have been or will be fixed within a tangible medium of expression and that constitute copyrightable subject matter within the meaning of Section 102 of the Copyright Act, 17 U.S.C. § 102. Many of Caracol's Original Programs are produced and

recorded prior to their broadcast or distribution.  Caracol's Original Programs that are produced and broadcast live are recorded as such programs are being broadcast or transmitted by Caracol. Caracol's programming feeds, including the Caracol Channel, are also recorded as they are being broadcast or transmitted by Caracol.

63.     Because Caracol is organized and existing under the laws of the country of Colombia, Caracol's Programming, including the Caracol Channel and Caracol's Original Programs, are generally foreign works and are therefore not subject to the copyright registration requirement applicable to "United States work[s]" under Section 411(a) of the Copyright Act, 17 U.S.C. § 411(a).

64.     Nonetheless, Caracol has registered several of its Original Programs with the United States Copyright Office (the "Registered Program(s)").  Copies of the copyright registration certificates for Caracol's Registered Programs, together with the August 12, 2013, Advance Notice, are attached as Exhibit 3.  Each of these registrations was recorded with the Copyright Office either prior to the Defendants' infringement of the respective Registered Programs, or in connection with a pre-registration recorded or Advance Notice of Potential Infringement under the Copyright Act, 17 U.S.C. § 411(c), served on the Defendants prior to the Defendants' infringement of the respective Registered Programs.

65.     As indicated in the attached registrations, Caracol is the sole author and exclusive owner of the copyrights in each of the Registered Programs.

66.     As with all of Caracol's Programming, each of the Registered Programs is an original audiovisual work that has been fixed in a tangible medium of expression and constitutes copyrightable subject matter within the meaning of Section 102 of the Copyright Act, 17 U.S.C. § 102.

67.     Under Section 106 of the Copyright Act, 17 U.S.C. § 106, Caracol possesses the exclusive rights to reproduce, distribute, publicly perform, and prepare derivative works based on Caracol's Programming, including the Registered Programs, as well as to authorize others to exercise those rights.

68.     Neither Caracol nor any person authorized by Caracol has granted any license, permission, or authorization to any Defendant to reproduce, distribute, publicly perform, or prepare derivative works of Caracol's Programming, including the Registered Programs, or to authorize others to do so.

69.     Defendants nevertheless have repeatedly retransmitted and will continue to retransmit Caracol's Programming, including, but not limited to, the Registered Programs, via the TVmia Service over the public Internet despite Caracol's multiple demands (which Defendants have acknowledged) that Defendants cease doing so.  For example:

70.     On August 20, 2013, Defendants retransmitted the Registered Program *Día a Día I* (PA0001868592), commencing at or around 6:30 AM (ET) via Defendants' Roku Application in the United States simultaneously, or nearly simultaneously, with Caracol's broadcast and transmission of that program on the Caracol Channel.

71.     On August 20, 2013, Defendants retransmitted the Registered Program *Noticias 6:30* (PA0001868546) commencing at or around 7:30 AM (ET) via Defendants' Roku Application in the United States simultaneously, or nearly simultaneously, with Caracol's broadcast and transmission of that program on the Caracol Channel.

72.     On August 20, 2013, Defendants retransmitted the Registered Program *Día a Día II* (PA0001868595), commencing at or around 9:30 AM (ET) via Defendants' Roku Application

in the United States simultaneously, or nearly simultaneously, with Caracol's broadcast and transmission of that program on the Caracol Channel.

73.     On August 20, 2013, Defendants retransmitted the Registered Program *Noticias 12:30* (PA0001868549), commencing at or around 1:30 PM (ET) via Defendants' Roku Application in the United States simultaneously, or nearly simultaneously, with Caracol's broadcast and transmission of that program on the Caracol Channel.

74.     On August 20, 2013, Defendants retransmitted the Registered Program *Noticias 19:00* (PA0001868551), commencing at or around 8:00 PM (ET) via Defendants' Roku Application in the United States simultaneously, or nearly simultaneously, with Caracol's broadcast and transmission of that program on the Caracol Channel.

75.     On July 8, 2016, Defendants retransmitted the Registered Program *La Niña: 40* (PAu003800474), commencing at or around 10 PM (ET) on www.satelitecolombia.com in the United States simultaneously, or nearly simultaneously, with Caracol's broadcast and transmission of that program on the Caracol Channel.

76.     On July 11, 2016, Defendants retransmitted the Registered Program *La Niña: 41* (PAu003800475), commencing at or around 10 PM (ET) on www.satelitecolombia.com in the United States simultaneously, or nearly simultaneously, with Caracol's broadcast and transmission of that program on the Caracol Channel.

77.     On July 12, 2016, Defendants retransmitted the Registered Program *La Niña: 42* (PAu003800473), commencing at or around 10 PM (ET) on www.satelitecolombia.com in the United States simultaneously, or nearly simultaneously, with Caracol's broadcast and transmission of that program on the Caracol Channel.

78. On August 2, 2016, Defendants retransmitted the Registered Program *Tu Voz Estéreo: Crimen Pasional* (PAu003678798), commencing at or around 3:28 AM (ET) on www.satelitecolombia.com in the United States simultaneously, or nearly simultaneously, with Caracol's broadcast and transmission of that program on the Caracol Channel.

79. On August 4, 2016, Defendants retransmitted the Registered Program *Tu Voz Estéreo: Servicio Secreto* (PAu003678806), commencing at or around 3:23 AM (ET) on www.satelitecolombia.com in the United States simultaneously, or nearly simultaneously, with Caracol's broadcast and transmission of that program on the Caracol Channel.

80. On August 5, 2016, Defendants retransmitted the Registered Program *Tu Voz Estéreo: Divide y Llorarás* (PAu003674538), commencing at or around 3:17 AM (ET) on www.satelitecolombia.com in the United States simultaneously, or nearly simultaneously, with Caracol's broadcast and transmission of that program on the Caracol Channel.

81. In engaging in the foregoing conduct, Defendants have violated Plaintiffs' exclusive rights in Caracol's Programming under the Copyright Act in at least the following ways:

    a. Defendants' transmission of the images and accompanying sounds of Caracol's Programming, including with respect to each of the Registered Programs, to Defendants' subscribers over the Internet without Caracol's consent constitutes a "public performance" of Caracol's copyrighted works in violation of Caracol's exclusive rights under the Copyright Act.

    b. Defendants' copying of Caracol's television programming and storing of those copies, ephemeral or otherwise, on Defendants' computer servers after Defendants capture Caracol's broadcasting signal and in connection

with retransmitting it over the Internet to Defendants' subscribers, including with respect to each of the Registered Programs, without Caracol's consent constitutes "reproduction" of Caracol's copyrighted works in violation of Caracol's exclusive rights under the Copyright Act.

c.     Defendants' retransmission of Caracol's television programming over the Internet to Defendants' subscribers, including with respect to each of the Registered Programs, without Caracol's consent constitutes "distribution" of Caracol's copyrighted works in violation of Caracol's exclusive rights under the Copyright Act.

d.     Defendants' transcoding of Caracol's Programming, including with respect to each of the Registered Programs, into a format suitable for distribution over the Internet, as well as the formatting of the Caracol Channel for display on Defendants' website, without Caracol's consent constitutes "preparation of derivative works" of Caracol's copyrighted works in violation of Caracol's exclusive rights under the Copyright Act.

82.     Defendants' reproduction, distribution, public performance, and preparation of derivative works of Caracol's Programming, including the Registered Programs, constitutes infringement of Plaintiffs' exclusive rights under copyright law in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501.

83.     As a result of Defendants' deliberate and willful infringement of Caracol's copyrighted works, Plaintiffs are entitled to recover, at Plaintiffs' option, either (a) damages and the profits of Defendants, or (b) statutory damages, in each case as permitted under Section 504 of the Copyright Act, 17 U.S.C. § 504.  Plaintiffs are also entitled recover Plaintiffs' costs of this

action and reasonable attorneys' fees, as permitted under Section 505 of the Copyright Act, 17 U.S.C. § 505.

84.     Each of the Defendants is directly liable for these acts of infringement under the Copyright Act because each Defendant causes and carries out the unauthorized reproduction, distribution, public performance, and/or preparation of derivative works of Caracol's Programming.  Upon information and belief, Defendants Bucci and Advarez are directly involved in and benefit from Defendants' infringing activity and are therefore individually liable.

85.     In the alternative, TVmia and Teveya are directly liable for these acts of infringement, and Bucci and Adarvez are vicariously liable for these acts of infringement because they profited from the infringement without taking any actions to stop or limit the infringement.  Upon information and belief, both Bucci and Adarvez, as owners and/or officers of TVmia, had the right and ability to supervise Defendants' wrongful conduct and had an obvious and direct financial interest in the infringement.

86.     For example, despite repeated demands by Caracol that Defendants cease their infringement—including through correspondence directly to counsel for Bucci—the infringing activity has continued.  In addition as owners and/or officers of TVmia, Bucci and Adarvez profited personally from the subscriber fees paid to TVmia for the content it retransmitted, including the infringing activity.

87.     In the further alternative, TVmia and Teveya are directly liable for these acts of infringement, and Bucci, Adarvez, and World Pass are contributorily liable for these acts of infringement.

88.     Bucci and Adarvez are contributorily liable because they have knowledge of the infringing activity and, as owners and/or officers of TVmia, caused or materially contributed to

the infringing activity of TVmia and Teveya by directing such activity, in whole or in part. Upon information and belief, Bucci and Adarvez authorized the infringing activity.

89.     World Pass is contributorily liable because, upon information and belief, it has knowledge of the infringing activity and materially contributed to the infringing activity of TVmia and Teveya by developing the Roku Applications used to access the Caracol Channel on the Roku platform.

90.     Defendants have committed and will commit each act of infringement alleged herein with the knowledge that Defendants are not authorized to exercise the rights of reproduction, distribution, public performance, or preparation of derivative works of Caracol's Programming.   Defendants' acts of infringement are therefore willful, intentional, and purposeful, in disregard of and with indifference to Plaintiffs' protected rights.

91.     Unless restrained by this Court, Defendants' misappropriation of Caracol's Programming threatens Plaintiffs with substantial, irreparable harm that cannot be fully compensated by money damages.   Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to preliminary and permanent injunctive relief prohibiting Defendants' infringement of their copyrights and exclusive rights under copyright law.

## SECOND CAUSE OF ACTION
### (Violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))

92.     The allegations contained in the foregoing paragraphs are repeated, realleged, and incorporated herein by reference as if fully set forth.

93.     For many years, beginning no later than 2004 and well before Defendants' use of the Caracol Marks, Plaintiffs have continuously used the Caracol Marks in the United States and throughout the world, including the name "Caracol" and the other Caracol Marks identified in Exhibit 2, in connection with the creation, transmission, and distribution of Caracol's

Programming and the building of goodwill associated with Caracol, CTV Inc., and Caracol's Programming.

94.     The Caracol Marks serve to identify Caracol and CTV Inc. as the unique source of Caracol's Programming and other products and services that bear the Caracol Marks, including the name "Caracol."  In particular, the word "*caracol*" means "seashell" in Spanish. While "*caracol*" is a common word in the Spanish language, it is not suggestive of television programming and is therefore arbitrary and inherently distinctive as applied to Caracol's Programming, and in particular, distinguishes Caracol's Programming from television programming and services offered and distributed by others.

95.     Defendants have no right, by agreement, statute or otherwise, to use the Caracol Marks.

96.     However, Defendants have used, and continue to use, the Caracol Marks in connection with the marketing, promoting, advertising, offering of, and charging subscribers fees for its unauthorized TVmia Service in United States interstate commerce, including by displaying the Caracol Marks on the www.tvmia.com, www.teveya.com, and www.satelitecolombia.com websites, in the metadata of those websites, and on the Roku Applications and Mobile Applications.

97.     Screenshots evidencing Defendants' unauthorized use of the Caracol Marks in connection with the TVmia Service, including the "CaraTV" icon created by Defendants' and referenced earlier, are attached hereto as Exhibit 4.

98.     Defendants' unauthorized use of the Caracol Marks (a) is likely to cause confusion, to cause a mistake, or deceive the public as to the affiliation, connection, or association between Plaintiffs and Defendants' television distribution service, or as to the origin,

sponsorship, or approval by Caracol of Defendants' commercial activities; and (b) misrepresents Caracol's association with and the nature of Defendants' television distribution service.  In particular, when a TVmia customer logs in to the TVmia Service, sees the Caracol Marks together with TVmia Service branding elements, clicks on icons bearing the Caracol Marks to access the Caracol Channel via the TVmia Service, and views the Caracol Channel framed by TVmia Service branding elements, the consumer is likely to believe that Caracol is associated with or otherwise has approved the TVmia Service.  Similarly, Caracol's programming licensors, and authorized distributors of Caracol Programming, are likely to believe that Caracol has approved the TVmia Service.

99.     Defendants' unauthorized use of the Caracol Marks in United States interstate commerce as described above therefore constitutes unfair competition and false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

100.    Defendants have continued to engage in this infringing activity with the knowledge that Defendants are not authorized to use the Caracol Marks and despite Caracol's demands that Defendants cease their unlawful activities.  Defendants' acts of infringement are therefore willful, intentional, and purposeful, in disregard of and with indifference to Plaintiffs' exclusive rights in the Caracol Marks.

101.    As a direct and proximate result of Defendants' deliberate and willful infringing activity, Plaintiffs have suffered and will continue to suffer loss of income, profits and goodwill and Defendants have and will continue to unfairly acquire income, profits and goodwill.

102.    Plaintiffs are entitled to recovery of Defendants' profits, damages (including treble damages), costs of this action, and attorney fees as permitted under the Lanham Act, 15 U.S.C. § 1117.

103.     Unless restrained by this Court, Defendants' use of the Caracol Marks threatens Plaintiffs with substantial, irreparable harm that cannot be fully compensated by money damages.  Accordingly, pursuant to 15 U.S.C. § 1116, Plaintiffs are also entitled to preliminary and permanent injunctive relief prohibiting Defendants from using the Caracol Marks.

### THIRD CAUSE OF ACTION
### (Violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c))

104.     The allegations contained in the foregoing paragraphs are repeated, realleged, and incorporated herein by reference as if fully set forth.

105.     The Caracol Marks are widely recognized by the general consuming public of the United States as a designation of the source of Caracol's Programming, including by virtue of the wide distribution of Caracol's Programming via the Caracol International Channel and other distributors throughout the United States and the rest of the world.

106.     The Caracol Marks are therefore distinctive and famous, and have been distinctive and famous long before Defendants started using the Caracol Marks.

107.     Defendants' unauthorized use of the Caracol Marks in connection with Defendants' unauthorized TVmia Service impairs the distinctiveness of the Caracol Marks and harms the reputation of the Caracol Marks.  In particular, because the Caracol Channel is not otherwise available in the United States, Defendants' use of the Caracol Marks in connection with its unauthorized distribution of the Caracol Channel is likely to associate the TVmia Service as the sole source of the Caracol Channel in the United States and therefore lessen the commercial strength and impair the ability of the Caracol Marks to uniquely identify Caracol as the single source of the Caracol Channel.  In addition, Defendants' use of the Caracol Marks with the TVmia Service not only harms the reputation of the Caracol Marks by associating them with the illicit nature of the TVmia Service, but also by associating them with Defendants'

platforms and video streaming technologies, which are generally of lower technical quality, sophistication, and reliability than otherwise would be expected by consumers from Caracol, CTV Inc., and their authorized distributors.

108.    Defendants' unauthorized use of the Caracol Marks in United States interstate commerce as described above is therefore likely to cause dilution by blurring and tarnishing the Caracol Marks, in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

109.    Defendants have continued to engage in this infringing activity with the knowledge that Defendants are not authorized to use the Caracol Marks and, despite Caracol's demands that Defendants cease their unlawful activities.  Defendants' acts of infringement are therefore willful, intentional, and purposeful, in disregard of and with indifference to Plaintiffs' exclusive rights in the Caracol Marks.

110.    As a direct and proximate result of Defendants' deliberate and willful infringing activity, Plaintiffs have suffered and will continue to suffer loss of income, profits and goodwill and Defendants have and will continue to unfairly acquire income, profits and goodwill.

111.    Plaintiffs are entitled to recovery of Defendants' profits, damages (including treble damages), costs of this action, and attorney fees as permitted under the Lanham Act, 15 U.S.C. § 1117.

112.    Unless restrained by this Court, Defendants' use of the Caracol Marks threatens Plaintiffs with substantial, irreparable harm that cannot be fully compensated by money damages.  Accordingly, pursuant to 15 U.S.C. § 1116, Plaintiffs are also entitled to preliminary and permanent injunctive relief prohibiting Defendants from using the Caracol Marks.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs Caracol and CTV Inc. respectfully request that the Court:

1.      Enter judgment in favor of Plaintiffs and against the Defendants on Plaintiffs'
First, Second, and Third Causes of Action;

2.      With respect to Plaintiffs' First Cause of Action, enter judgment declaring that
Defendants have infringed Caracol's exclusive copyrights, and CTV Inc.'s exclusive rights
therein, in Caracol's Programming in violation of 17 U.S.C. §§ 106 and 501;

3.      With respect to Plaintiffs' Second Cause of Action, enter judgement declaring that
Defendants' use of the Caracol Marks constitutes unfair competition and false advertising in
violation of 15 U.S.C. § 1125(a);

4.      With respect to Plaintiffs' Third Cause of Action, enter judgement declaring that
Defendants' unauthorized use of the Caracol Marks is likely to cause dilution by blurring and
tarnishing the Caracol Marks, in violation of  15 U.S.C. § 1125(c);

5.      With respect to Plaintiffs' First Cause of Action, enter preliminary and permanent
injunctive relief in Plaintiffs' favor enjoining and restraining Defendants, and their successors,
assigns, parents, subsidiaries, affiliates, officers, directors, agents, and employees, and all
persons acting in concert or participation with them, from publicly performing, retransmitting,
streaming, copying, distributing, displaying, making derivative works of, or otherwise using,
directly or indirectly, whether over the Internet (including through the TVmia Service and
websites such as www.tvmia.com, www.teveya.com, or www.satelitecolombia.com), via Roku
Applications, Mobile Applications, and other web applications, via portable devices, or by any
other means, device, or process, any television programming or other works, in whole or in part,
whether now in existence or later created, in which Caracol (or any parent, subsidiary, or affiliate

28

of Caracol) owns or controls, or in the future will own or control, an exclusive right under the Copyright Act;

6.      With respect to Plaintiffs' Second and Third Causes of Action, enter preliminary and permanent injunctive relief in Plaintiffs' favor enjoining and restraining Defendants, and their successors, assigns, parents, subsidiaries, affiliates, officers, directors, agents, and employees, and all persons acting in concert or participation with them, from displaying or otherwise using the Caracol Marks, directly or indirectly, alone or in combination with other words or symbols, in connection with any product or service of Defendant, whether over the Internet (including through the TVmia Service websites such as www.tvmia.com, www.teveya.com, or www.satelitecolombia.com), via Roku Applications, Mobile Applications, and other web applications, via portable devices, or by any other means, device, or process;

7.      With respect to Plaintiffs' Second and Third Causes of Action, and pursuant to 15 U.S.C. § 1116(a), direct the Defendants to file with the Court and serve on Plaintiffs within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

8.      With respect to Plaintiffs' First Cause of Action, award Plaintiffs monetary relief against Defendants, including:

        a.      At Plaintiffs' election and pursuant to 17 U.S.C. § 504, either (i) actual damages and the profits of the Defendants, or (ii) statutory damages of the maximum statutory amount due to the exceptional nature of this case resulting from Defendants' deliberate and willful infringing activity; and

      b.      The costs of this action and reasonably attorneys' fees pursuant to 17 U.S.C. § 505 due to the exceptional nature of this case resulting from Defendants' deliberate and willful infringing activity;

9.      With respect to Plaintiffs' Second and Third Causes of Action, award Plaintiffs monetary relief against Defendants in accordance with 15 U.S.C. § 1117, including:

      a.      All profits received by Defendants from revenues of any kind made as a result of Defendants' use of the Caracol Marks, this amount to be trebled;

      b.      All damages sustained by Plaintiffs as a result of Defendants' actions, this amount to be trebled;

      c.      The costs of this action; and

      d.      All reasonable attorneys' fees pursuant to 15 U.S.C. § 1117, due to the exceptional nature of this case resulting from Defendants' deliberate and willful infringing activity;

10.      Award Plaintiffs pre- and post-judgment interest as allowed by law;

11.      Award Plaintiffs such other and further relief that this Court may deem just and proper; and

12.      Provide a jury trial on all issues so triable.

Dated: August 12, 2016

/s/    Fernando Alvarez-Perez
Fernando Alvarez-Perez
Florida Bar No. 0114186
E-mail:  falvarez-perez@brookspierce.com
BROOKS, PIERCE, McLENDON,
  HUMPHREY & LEONARD, L.L.P.
P.O. Box 1800
Raleigh, NC  27602
Telephone:  919-839-0300
Facsimile:  919-839-0304


OF COUNSEL:

Coe W. Ramsey
N.C. Bar No. 25482
E-mail:  cramsey@brookspierce.com
*pro hac vice motion forthcoming*
Charles E. Coble
N.C. Bar No. 25342
E-mail:  ccoble@brookspierce.com
*pro hac vice motion forthcoming*
BROOKS, PIERCE, McLENDON,
  HUMPHREY & LEONARD, L.L.P.
P.O. Box 1800
Raleigh, NC  27602
Telephone:  919-839-0300
Facsimile:  919-839-0304

*Counsel for Plaintiffs Caracol Televisión S.A.*
*and Caracol Television, Inc.*