United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Caracol Television, S.A. and Caracol Television, Inc., Plaintiffs, | ) ) ) |
| v. | ) ) Civil Action No. 16-23486-Civ-Scola ) |
| TVmia International Corp., and others, Defendants. | ) ) ) |

## **Order on Motion for Summary Judgment**

This matter is before the Court upon the Plaintiffs Caracol Television, S.A. and Caracol Television, Inc.'s motion for summary judgment (ECF No. 157). The Defendants Eduardo Perez Bucci and Marcelo J. Adarvez, proceeding pro se, filed a response (ECF No. 162), to which the Plaintiffs replied (ECF No. 163). Following careful consideration of the motion, all supporting and opposing submissions, the record in this case and the applicable law, the Court **grants** the motion as to Defendant Bucci, and **denies** the motion as to Defendant Adarvez.

1. **Background and Relevant Facts**[1]

The Plaintiffs initiated this action against multiple defendants, including TVmia International, Corp, TeVeYa, Corp., World Pass Communications Corp., Bucci, and Adarvez, asserting claims for copyright and trademark infringement (Compl., ECF No. 1.) Defaults have been entered against the corporate defendants. (*See* ECF Nos. 123, 130.)

The following facts are undisputed. Caracol Television, S.A. produces and compiles television programming in Colombia, which is transmitted and distributed by Caracol Television, Inc. and other authorized entities, throughout Colombia and the world. Caracol Television, Inc. is the exclusive licensing agent for original programming and the exclusive licensee for distribution of the Caracol International Channel in the United States. (Pls.' Statement of Material Facts ("SOMF"), ECF No. 158 ¶ 3.) Bucci created TVmia

---

[1] Although the Defendants responded in substance to the Plaintiffs' motion for summary judgment, they did not separately file a statement of material facts, as required by the Local Rules. *See* S.D. Fla. L.R. 56.1(a). Nevertheless, to the extent that the Defendants' response sets forth material facts, the Court takes those into consideration.

International Corp. in 2011, through which television signals from one country are retransmitted to users in another. (*Id.*, ¶¶ 4-5.) Subscribers pay a fee for access to the Caracol channel on the satelitecolombia.com website, created by Bucci. *(Id.*, ¶ 7.) However, TVmia does this without the consent of the television networks. (*Id.*, ¶ 6.) Bucci is also associated with the websites for TeVeYa and diplomaticostv.com, which streamed Caracol content as well. (*Id.*, ¶¶ 9, 13-14.) Despite numerous notices of potential infringement, the rebroadcasting and streaming continued. (*Id.*, ¶¶ 12-13, 19-23, 28.)

Bucci served as the president of TVmia until 2014, when he sold the satelitecolombia.com and teveya.com websites to their current owner, Hector Maturan. (*Id.*, ¶ 17.) Adarvez served as the vice president of TVmia, and then its president, following Bucci's resignation. (*Id.*, ¶¶ 44, 53-54.) Adarvez promoted TVmia. (*Id.*, ¶ 55.) In fact, the Caracol logos and name were used on the TeVeYa application, TVmia.com, satelitecolombia.com, and diplomaticostv.com to indicate the unauthorized Caracol stream. (*Id.*, ¶¶ 59.)

After filing suit, the Plaintiffs filed a motion for preliminary injunction, arguing that the Defendants continued to infringe by streaming Caracol content on their associated websites, even after being served with take-down notices and notices of potential infringement. (ECF No. 43.) The Defendants did not object to the entry of a preliminary injunction, so the Court granted the motion. (ECF No. 54.) Thereafter, the Plaintiffs filed a motion for contempt (ECF No. 55) against the Defendants based upon their continuing to stream unauthorized Caracol content via the satelitecolombia.com website. In response, the Defendants claimed that they had no control over what was being disseminated over the website. (ECF No. 61) Following a hearing on the motion, the Magistrate Judge certified the following facts: Caracol content continued to be video streamed after the effective date of the preliminary injunction via satelitecolombia.com, which was accessible to TVmia subscribers; Bucci controls satelitecolombia.com; the sale of satelitecolombia.com to Maturan was a sham and Bucci continued to control the site; and, that notwithstanding his resignation, Bucci continued to control TVmia's internet operations and finances. (*See* R. & R., ECF No. 151.) Thus, the Magistrate Judge recommended that the Court grant the motion for contempt and enter an order of contempt against Bucci. (*Id.*) The Court adopted the Magistrate Judge's report and recommendation (ECF No. 154), and entered an order of civil contempt (ECF No. 155) against Bucci.

2. **Legal Standard**

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260.

All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004). "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24. The nonmovant's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *Id.* at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Id.*

### 3. Analysis

Based upon the evidence presented and the undisputed facts, the Plaintiffs are entitled to summary judgment against Bucci upon their copyright and trademark infringement claims, but not against Adarvez. While neither Defendant offers relevant opposing facts or evidence to dispute the evidence provided by the Plaintiffs, upon a review of the record, a genuine issue of material fact remains with respect to the claims against Adarvez.

### a. **The Plaintiffs are entitled to summary judgment against Bucci for copyright infringement**

There is no evidence in the record to overcome the overwhelming evidence establishing the Plaintiffs' claims against Bucci in this case. Indeed, in the response to the Plaintiffs' motion, Bucci merely quibbles with some of the

characterizations of ancillary facts made by the Plaintiffs. (*See* Response, ECF No. 162.) Even construed in the light must favorable to Bucci, these facts are neither material, nor do they create an issue of fact that is genuine.

In their first cause of action, the Plaintiffs assert a claim for copyright infringement under the Copyright Act, 17 U.S.C. §§ 106, 501. In order to establish a claim for copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Latimer v. Roring Toyz, Inc.*, 601 F.3d 1224, 1232-33 (1th Cir. 2010) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991)); *see also Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996). "In judicial proceedings, a certificate of registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." *Bateman*, 79 F.3d at 1541 (quoting 17 U.S.C. § 410(c)). Bucci does not dispute the existence or validity of the Plaintiffs' copyrights with respect to eleven (11) programs for which it claims infringement. (*See* Mot. at 8, ECF No. 157.) In addition, the Plaintiffs have provided Certificates of Registration from the United States Copyright Office made within the statutorily prescribed timeframe for the eleven programs, including three episodes of "Tu Voz Estéreo," "Día a Día I" and "Día a Día II," "Noticias" 6:30, 12:30, and 19:00 on August 20, 2013, and three episodes of "La Niña." (*See* ECF No. 1-9.) Therefore, the Court finds that the Plaintiffs have satisfied their burden in establishing the first element.

In order to establish the second element, "a plaintiff must establish, as a factual matter, that the alleged infringer actually used the copyrighted material to create his own work." *Bateman*, 79 F.3d at 1541 (internal citation and quotations omitted). In other words, the plaintiff must establish "that the alleged infringer actually copied plaintiff's copyrighted material." *Latimer*, 601 F.3d at 1233. One of the rights guaranteed to a copyright owner by the Copyright Act is the "exclusive right to perform the copyrighted work publicly," which is infringed by transmitting or otherwise communicating a performance to the public in the form of streaming over the internet. *Am. Broadcasting Cos., Inc. v. Aereo, Inc.*, 134 S. Ct. 2498, 2502 (2014) (internal citations and quotations omitted). Once again, Bucci does not dispute that the websites over which the Magistrate Judge previously determined he exercised control rebroadcast Caracol content, nor that he did not have a license or permission to do so. Thus, the Plaintiffs have also established the second element of copyright infringement.

Finally, the Plaintiffs urge the Court to find that Bucci's infringement was willful. Under the circumstances of this case, the Court agrees and finds

that it was. Indeed, the Court need look no further than an attachment provided by Bucci himself, in response to the Plaintiffs' motion, which demonstrates that Bucci was on notice as early as the beginning of 2012 that TVmia's business model implicated serious potential infringement concerns. (*See* Response at 40-44, ECF No. 162.) Although Bucci appears to place much emphasis on the fact that the letter does not constitute a formal legal opinion letter, and is only a "preliminary review" of "possible" issues, the conclusion is unequivocal,

> we cannot give you assurance that the FCC or any alleged copyright owner, will not sue TVmia an you individually, or that TVmia and you individually will not have potential liability for retransmitting distant television broadcast signals without complying with all the U.S. regulatory requirements of cable service operators and without securing the written consent of the distant broadcasters to TVmia's retransmission.

(*Id.* at 44.) As such, Bucci chose to continue to infringe upon the Plaintiffs' rights notwithstanding the potentially serious consequences.

### b. The Plaintiffs are entitled to summary judgment against Bucci for trademark infringement and dilution

In their second and third causes of action, the Plaintiffs assert claims for trademark infringement and dilution pursuant to the Lanham Act, 15 U.S.C. §§ 1125(a), and (c). "To establish a prima facie case of trademark infringement under § 43(a), a plaintiff must show '(1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two.'" *Tana v. Dantanna's*, 611 F.3d 767, 772 (11th Cir. 2010) (quoting *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 358 (11th Cir. 1997)). The Lanham act protects common law trademarks, even in the absence of federal trademark registration. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). "Under common law, trademark ownership rights are 'appropriated only through actual prior use in commerce.'" *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (quoting *Tally-Ho, Inc. v. Coast Cmty. College Dist.*, 889 F.2d 1018, 1022 (11th Cir. 1989)). In this case, Bucci does not dispute the validity of Caracol's mark, and the Plaintiffs provide sufficient evidence to establish that they possess trademark rights in the Caracol mark and name associated with television programming, in the absence of a federal

trademark registration. Thus, the Court considers the second prong of the trademark infringement claim.

Normally, when determining the likelihood of confusion, the court considers seven (7) factors: "(1) the strength of the allegedly infringed mark; (2) the similarity of the infringed and infringing marks; (3) the similarity of the goods and services the marks represent; (4) the similarity of the parties' trade channels and customers; (5) the similarity of advertising media used by the parties; (6) the intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public. *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ. Online Learning Campus*, 830 F.3d 1242, 1255 (11th Cir. 2016) (citing *Tana*, 611 F.3d at 774-75). Furthermore, in order to prove a dilution claim, "a plaintiff must provide sufficient evidence that 1) its mark is famous; 2) the defendant adopted its mark after the plaintiff's mark became famous; 3) the defendant's mark diluted the plaintiff's mark; and 4) the defendant's use is commercial and in commerce." *Carnival Corp. v. SeaEscape Casino Cruises, Inc.*, 74 F. Supp. 2d 1261, 1269 (S.D. Fla. 1999) (Moreno, J). In this case, the Court need not engage in a lengthy consideration of these factors, since it is undisputed that the exact Caracol logos and marks were used on the infringing websites controlled by Bucci to indicate access to unauthorized streams of Caracol content. Therefore, the Court finds that no genuine issue of material fact remains, and the Plaintiffs are entitled to summary judgment on their claims of trademark infringement and dilution against Bucci.

### c. A genuine issue of material fact remains with respect to Adarvez's involvement

In general, "[i]f an individual actively and knowingly caused the infringement, he is personally liable." *Chanel, Inc. v. Italian Activewear of Fla., Inc.* 931 F.2d 1472, 1477 (11th Cir. 1991). "Alternatively, one who induces[,] causes or materially contributes to the infringing activity of another, *with knowledge* of the infringing activity, may be held liable as a 'contributory' infringer. Thus, a corporate officer who knowingly directs, authorizes, controls, approves or ratifies the infringing activity may be personally liable, without regard to piercing the corporate veil." *ADT LLC v. Sec. Networks, LLC*, No. 12-81120-CIV-HURLEY, 2017 WL 2113410, *2 (S.D. Fla. Mar. 16, 2017) (Hurley, J.) (emphasis in original); *see also ADT LLC v. Alarm Protection Tech. Fla., LLC*, 646 F. App'x 781, 788-89 (11th Cir. 2016) ("Specifically, a corporate officer who directs, controls, ratifies, participates in or is the moving force behind the infringing activity, is personally liable for such infringement.") (quoting *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994).

The Plaintiffs conceded at the hearing on the motion for contempt that the evidence was not the same in character or volume with respect to Adarvez's conduct as it is with respect to Bucci's. (ECF No. 165 at 31-32.) In fact, according to the Plaintiffs, Adarvez's role with respect to the defendant corporations was largely on paper—in the position of officer and billing contact—and he was not profiting from the business model or otherwise involved in the control and management of the defaulted defendant companies. *Id.* at 32. Though Adarvez did admit to promoting TVmia, he also professed ignorance with respect to what and how exactly the defendant companies and Bucci provided services to their customers. (*See* ECF No. 157-3 at 26-27). As a result, the Plaintiffs ultimately abandoned their motion for contempt against Adarvez, and the Magistrate Judge made no finding with respect to the degree of Adarvez's involvement or whether Adarvez violated the preliminary injunction order.

As such, at this juncture, the only evidence against Adarvez is his name on corporate documents, the fact that he promoted TVmia, and a personal association with Bucci. However, Adarvez's testimony is that he does not in fact exercise any true role with respect to any of the defendant companies. The Plaintiffs have provided no comparable financial evidence with respect Adarvez, other than the fact that he received a salary, and had signature authorization on TVmia International's bank accounts; therefore, the Plaintiffs hypothesize that he helped cover Bucci's involvement in the ongoing infringement through the purported loan Bucci gave to TVmia International. (*See* ECF No. 157-4 at 21-22.) In fact, Adarvez was not present at the meeting during which the preliminary report of potential liability with respect to the infringing business model was discussed. (*Id.* at 25) Therefore, there is genuine issue of material fact as to Adarvez's involvement, such that the Court cannot say as a matter of law that the Plaintiffs are entitled to summary judgment against him.

### 4. Conclusion

For the reasons set forth above, the Plaintiffs' motion for summary judgment (**ECF No. 157**) is **granted in part** and **denied in part**. This matter remains on the Court trial calendar for the two week period commencing January 8, 2018 with the calendar call scheduled for January 2, 2018 at 9:00 a.m. The Defendant Marcelo J. Adarvez must personally appear at the calendar call or the Court will strike his pleadings and enter a default against him. In light of the impending trial date, if Adarvez wishes the Court to find an attorney who is willing to represent him on a pro bono basis for the trial, he should advise the Court of his wish **no later than December 20, 2017**. The Court will

then attempt to find a volunteer attorney to represent Adarvez at the trial but the Court will not reschedule the trial date.

**Done and ordered** at Miami, Florida, on December 11, 2017.

_____
Robert N. Scola, Jr.
United States District Judge

Copies to counsel of record and:
Eduardo Perez Bucci
168 SE 1st Street
Suite 407
Miami, FL 33131
bucci@tvmia.com

Marcelo J. Adarvez
168 SE 1st Street
Suite 407
Miami, FL 33131